Susan **NIMROD**, etc., et al., Plaintiffs, Appellants,

v.

Stephen **SYLVESTER** et al., Defendants, Appellees.

No. 6754.

United States Court of Appeals First Circuit.

Dec. 21, 1966.

Daniel F. Featherston, Jr., Boston, Mass., for appellants.

Andrew G. Meyer, with whom Morrison, Mahoney & Miller, Boston, Mass., were on brief, for Jack Meehl, appellee.

James D. Casey, with whom Donald Q. Bunker, Boston, Mass., was on brief, for Stephen Sylvester, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

## OPINION OF THE COURT.

McENTEE, Circuit Judge.

Plaintiffs appeal from a judgment for the defendants and from the trial court's denial of their motion for a new trial.

This is a diversity suit in which plaintiff, Susan Nimrod, a minor, seeks to recover damages for the loss of her right eye allegedly caused by defendants' negligence.[1] This injury occurred while Susan was attending a church outing held at a YMCA camp in Waltham, Massachusetts. Susan and one Linda Elia, both fifteen years of age, met the defendants, Stephen Sylvester and Jack Meehl, outside a lodge building located on the camp grounds. Sylvester, age seventeen, was the camp rifle and shooting instructor. Meehl, who was thirteen, was a relative of the camp director and a guest at the camp. Eventually these youngsters entered the lodge. Inside there was a gun case containing a number of BB guns. This case was open. Also, two BB guns were lying on a desk. Sylvester had left these two guns there to be repaired and cleaned.[2]

While inside the lodge Sylvester picked up one of the guns from the desk and showed the girls how it operated. He cocked it and fired it at the floor but nothing was seen to come out. Then he put the gun back on the desk. Shortly thereafter Susan picked up one of the two guns. What she did with it is the subject of conflicting testimony. Meehl said Susan aimed and fired the gun at him but only a puff of air came out. Sylvester testified that she shot it "in the direction of" Meehl. Linda couldn't recall Susan handling the gun at all. Susan denied cocking, aiming or firing the gun. She stated that she only examined it and put it back on the desk. At this point Meehl went over to the desk, picked up the same gun that Susan had examined and walked away.

Susan testified that she did not know where Meehl got this gun (from the desk or the gun case); that she did not see him with it until he stood pointing it in her direction for a period of "two or three minutes". The record also indicates that she did not protest or say anything concerning the guns to either Meehl or Sylvester during this time. This, despite the fact that she said she knew the danger in anyone pointing a gun at her—even a BB gun. Meehl cocked the gun and fired it at Susan. A pellet came out and struck her in the eye.

At the conclusion of the testimony and in the absence of the jury, the court informed counsel for the parties that in addition to the other issues covered by the general verdict, it was going to put a special question to the jury as to whether the plaintiff Susan voluntarily assumed the risk of the accident. At this point plaintiffs' counsel objected generally to the submission of this special question but when asked to give the grounds for his objection stated that he had

---

1. Her father, Joseph Nimrod, Jr., also a party plaintiff, seeks to recover consequential damages in this suit but we do not reach that question.

2. As far as Sylvester knew there were no pellets in either gun. He did know that the guns were not in normal operating condition. They would misfire—which means that after they were loaded, cocked and shot, sometimes a pellet would come out but other times not. There is no evidence, however, that Sylvester informed anyone of this peculiar defect in these two guns.

none.[3] Shortly thereafter, the trial judge charged the jury generally on the issues in the case and particularly with reference to the question of voluntary assumption of risk. He then submitted the special question to the jury [4] and told them to answer this question in addition to giving a general verdict. Plaintiffs did not object to any of the court's instructions.

During its deliberations and in the presence of the court and counsel, the jury requested additional instructions in the form of three written questions. In responding to this request the court gave the jury supplementary instructions on the issue of voluntary assumption of risk.[5] Plaintiffs' counsel again failed to object nor did he object that the jury made three requests for instructions but the court discussed only two. The jury answered "Yes" to the special question and returned a general verdict for the defendants.

Plaintiffs now complain that the trial court committed prejudicial error in instructing the jury (1) on the question of voluntary assumption of risk; (2) in not answering fully the jury's requests for supplemental instructions and (3) in intentionally not disclosing to counsel all of the jury's requests. Fed.R.Civ.P. 51 provides in part that:

"No party may assign as error the giving or the failure to give an instruc-

tion unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

█ It has been uniformly held that failure of a party to make timely and proper objections to the court's instructions as required by this rule precludes him from relying upon them in this court on appeal. Garrett v. Campbell, 360 F.2d 382, 386, 387 (5th Cir. 1966); John Fabick Tractor Co. v. Lizzo & Sons, Inc., 298 F.2d 63, 65 (2d Cir. 1962); Giacalone v. Raytheon Mfg. Co., 222 F.2d 249, 251 (1st Cir. 1955). Plaintiffs not having complied with Rule 51, it is much too late for them to make this objection now.

█ Plaintiffs' counsel argues that his initial general objection, made when the court first informed counsel it intended to submit this special question to the jury, preserved his clients' rights. The record demonstrates that this general objection really was no objection at all [6] because (1) it was withdrawn and (2) it did not state distinctly the matter to which he objected and the grounds of his objection as required by Rule 51. See Charles A. Wright, Inc. v. F. D.

---

3. "The Court: * * * Now what is your objection?
    Mr. Featherston: My point is, your Honor—I have no argument at all—
    The Court: Then you have no grounds for the objection, have you?
    Mr. Featherston: It would depend upon the context in which such a question is asked on the instructions as to assumption of the risk and intervening negligence.
    The Court: You rose to object to my putting the question. State the reason for your objection or withdraw your objection.
    Mr. Featherston: Not to your putting it, your Honor."

4. The question was "* * * did the plaintiff, Susan Nimrod, voluntarily assume the risk of the accident, which she suffered on August 11, 1963, answer: Yes or No."

5. One of these questions concerned the jury's right to take notes during the charge. The second question was "What is meant by voluntary assumption of risk. Please clarify." The court answered these two questions but did not answer the third question as such. The court, in accordance with its usual procedure when no objection is taken to its instructions, did not keep the paper on which the jury's questions had been written and there is no record of the precise form of the third question. The court's post-trial memory was that "it related to what would be the effect of the assumption of the risk in barring the plaintiff from recovery." The court had previously charged the jury that assumption of the risk barred recovery.

6. See footnote 3.

Rich Co., 354 F.2d 710, 713 (1st Cir.), cert. denied, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966).

■ As to plaintiffs' second and third contentions,[7] it is apparent from the record that the jury made three requests for supplementary instructions and the trial court answered only two. Plaintiffs' counsel was present at the time and his unawareness of the actual situation was of his own making.[8] From our examination of the record, we are convinced that plaintiffs had full opportunity to preserve their rights with reference to the remaining request but failed to do so in a proper and timely manner.

Plaintiffs further argue that the errors now complained of, having been specified in their motion for a new trial, this appeal taken from the denial of this motion as well as from the judgment, properly raises these errors despite plaintiffs' failure to make proper and timely objection in the trial court.

■■ An order denying a motion for a new trial is not open to review on appeal unless it appears that in denying the motion, the trial court abused its discretion. Hobart v. O'Brien, 243 F.2d 735, 741 (1st Cir.), cert. denied, 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed.2d 42, rehearing denied, 355 U.S. 879, 78 S.Ct. 139, 2 L.Ed. 2d 110 (1957). If the abuse of discretion is based on alleged errors in the court's instructions, as is the case here, we cannot consider these errors on the issue of abuse of discretion unless proper objection was made with reference to them in the district court as required by Rule 51, supra. Sears v. Pauly, 261 F.2d 304, 307 (1st Cir. 1958). To hold otherwise would allow a party to circumvent the specific requirements of this rule.

■ This does not mean, however, that absent objection, we are necessarily precluded from considering on appeal alleged errors in the instructions of a trial court. Where there is plain error we may notice such error of our own volition. This rule should be applied sparingly and only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice. Giacalone v. Raytheon Mfg. Co., supra. See also Dichner v. United States, 348 F.2d 167, 168 (1st Cir. 1965). Only the most palpable of errors will be noticed on appeal when no objection was made in the district court. Accord, Stack v. United States, November 10, 1966 (1st Cir.), 368 F.2d 788.

■ From our examination of the record, we cannot say that this is a proper case for the application of the plain error rule. If the jury believed, as well it might, that Susan used the gun in the way defendants said she did, we cannot say that the jury was unwarranted in finding that she assumed the risk of this accident. This seems particularly true in light of the fact that Susan testified she did not know where Meehl got the gun he aimed and fired at her. It would, therefore, be difficult to argue that Susan was relying on any special assurance she might have received from the fact that twice before a gun had been taken from the desk and discharged without a pellet coming out.

Affirmed.

---

7. Plaintiffs' counsel says that he did not learn until after the trial that one of the three questions asked by the jury was never answered by the court and had never been made known to counsel and, therefore, he says he did not have an opportunity to make an objection to the court's failure to answer this request.

8. Plaintiffs made no request to examine the jury's questions and took no action to preserve them. This was the time for proper objection and inquiry as to the question that was not answered. See Smith v. Ellerman Lines, 247 F.2d 761, 765 (3d Cir. 1951).