Jose MARTINEZ MOLL et al.,
Plaintiffs, Appellees,

v.

LEVITT & SONS OF PUERTO RICO,
INC., Defendant, Appellant.

No. 77–1380.

United States Court of Appeals,
First Circuit.

Argued Feb. 13, 1978.

Decided Sept. 15, 1978.

As Amended Sept. 26, 1978.

Marshall S. Wolff, Los Angeles, Cal., with whom C. Stephen Howard, Marilyn Clare, and Tuttle & Taylor, Inc., Los Angeles, Cal., were on brief, for appellant.

Philip E. Roberts, Santurce, P. R., with whom Harry E. Woods and Woods & Woods, Santurce, P. R., were on brief, for appellees.

Before COFFIN, Chief Judge, MOORE * and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Levitt & Sons of Puerto Rico, Inc. (Levitt-Puerto Rico) appeals from a judgment for $357,000 in a diversity action brought against it by plaintiffs-appellees Jose M. Martinez Moll and Inez Cartagena Latorre. Central to plaintiffs' case was section 3374 of the Civil Code of Puerto Rico, which provides in pertinent part:

> "Contracts shall only be valid between the parties who execute them and their heirs, . . .
>
> Should the contract contain any stipulation in favor of a third person, he may demand its fulfillment, provided he has given notice of his acceptance to the person bound before it may have been revoked."

P.R. Laws Ann. tit. 31 § 3374. Plaintiffs claimed that such a stipulation in their favor had been made in a contract between Levitt-Puerto Rico and Levitt & Sons of Bayamon, Inc. (Levitt-Bayamon), an affiliate of Levitt-Puerto Rico, for sale of real estate formerly owned by appellees. The jury returned a special verdict accepting

* Of the Second Circuit, sitting by designation.

this theory, and judgment was thereupon entered. Levitt-Puerto Rico has appealed.

On September 1, 1972, Levitt-Bayamon and appellees executed a public deed (Deed No. 38) for the purchase of appellees' 121 cuerda farm.[1] Levitt-Bayamon paid part of the purchase price of $1,190,000[2] before executing the deed, and gave appellees five promissory notes secured by a mortgage on the property for the balance of the price. The notes, each in the amount of $178,500, were due on the first of September of 1973, 1974, 1975, 1976, and 1977, respectively. Each note contained the following clause:

"In case of default on the part of the undersigned under the aforementioned mortgage or under this mortgage note, *the holder hereof shall have the right to look solely to the mortgaged property* for the collection of any unpaid amounts due thereunder and *the undersigned will not be personally liable.*" [Emphasis supplied.]

Levitt-Puerto Rico purchased the property from Levitt-Bayamon on February 7, 1975. The corporate affiliates made the transfer pursuant to a "Deed of Purchase and Sale and Assumption of Mortgage" (Deed No. 6), which contained the following language in its paragraph "THIRD":

"The Seller represents and warrants unto the Purchaser that the Property is completely free and clear of any and all charges, liens and encumbrances, *except for a purchase money mortgage which guarantees payment of five (5) promissory notes* in the principal amount of . . ($178,500.00), each. . . . Payments having been made of the same, the Seller obtained the originals of the first two aforesaid promissory notes and by Deed Number One . . . Seller cancelled the same and partially cancelled the mortgage which guaranteed payment of the same, thereby reducing said mortgage to the current outstanding balance

of principal of . . . ($535,500.00)."[3] [Emphasis supplied.]

Paragraph "FOURTH" read:

"Having previously agreed thereon, the Seller hereby sells, transfers and conveys unto the Purchaser the Property together with all appurtenant rights . . . in fee simple absolute ("pleno dominio") under the following terms and conditions:

"A) The purchase price for the property is the sum of . . . ($1,320,-798.79).

"B) The purchase price for the property is paid by the Purchaser to the Seller in the following manner: *Purchaser hereby assumes the mortgage indebtedness described in paragraph THIRD above,* with its present outstanding balance of principal of . . . ($535,500.00), retaining an equal amount from the purchase price to satisfy the same on its due date . . . . .

"The parties hereto clarify that they have separately computed the interest due since the last payment of the principal to the date hereof and that the Seller has separately reimbursed the Purchaser for the same so that upon the due date of the next installment of principal *the Purchaser will pay to the mortgagee the entire installment,* including all accrued interest." [Emphasis supplied.]

Appellees maintained that, read in light of certain oral and written communications between the parties, appellant's assumption of the mortgage indebtedness and above promise to pay the mortgagee were intended to and did create personal liability on appellant's part for the remaining $535,500, despite the non-recourse provisions in the original notes between Levitt-Bayamon and appellees. Appellees styled the assumption of indebtedness in Deed No. 6 a "stipulation in favor of a third party" which appellees could enforce pursuant to the provisions of § 3374 of the Civil Code, *supra.*

---

1. A "cuerda" is a measure of land equal to about 0.97 acres.

2. This price was later increased by $23,700 on the basis of a more current survey. The final purchase price thus amounted to $1,213,700.

3. Pursuant to the terms of Deed No. 38, the land could be "liberated" from the risk of foreclosure upon payment of each note at the rate of $10,000 per cuerda. Since two notes were paid, a proportionate amount of land had been "liberated" from the mortgage.

In August, 1975, Levitt-Puerto Rico informed appellees that it would not make payments on the last three promissory notes executed by Levitt-Bayamon, and offered to deed the remainder[4] of the property back to appellees. Appellees refused this offer and in October, 1975, brought an "action for collection of monies" in the district court, seeking to recover the balance of the debt from Levitt-Puerto Rico.[5]

In a ruling on a pretrial motion, the district court held that the terms of Deed No. 6 (between Levitt-Puerto Rico and Levitt-Bayamon) were not conclusive of the existence of a stipulation to create personal liability to appellees.[6] Puerto Rican law therefore instructed that the intent of the contracting parties as proved by the acts of the parties should control the construction of the contract. P.R. Laws Ann. tit. 31, § 3471.[7] The focal inquiry at trial was thus whether Levitt-Puerto Rico "intended to increase Plaintiffs [–Appellees'] original rights of payment by becoming personally liable to Plaintiffs when Defendant [–Appellant] acquired" the property from Levitt-Bayamon. The jury answered this query in the affirmative.

### 1. Sufficiency of the evidence

■ Appellant argues that there was not enough evidence to submit the question of its alleged intent to the jury. However, appellant never questioned the sufficiency of the evidence in this regard when moving for a directed verdict, on other grounds, at the close of all the evidence.** Fed.R. Civ.P. 50(b) therefore barred appellant's belated assertion of the question in a post-verdict motion for judgment n. o. v.;[8] and this court may not consider the sufficiency issue on appeal. *LaForest v. Autoridad de las Fuentes Fluviales*, 536 F.2d 443 (1st Cir. 1976); *Sullmeyer v. Coca Cola Co.*, 515 F.2d 835, 846 & n. 17 (5th Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976); *Gillentine v. McKeand*, 426 F.2d 717, 722–23 (1st Cir. 1970); *see* 9 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2537 (1971).

■ Appellant counters that it would have been futile for it to have moved for a directed verdict on insufficiency grounds at the close of all the evidence. It describes how, after defendant-appellant rested, plaintiffs-appellees moved for a directed verdict, arguing that the evidence conclusively established Levitt-Puerto Rico's intention to assume the indebtedness and Martinez Moll's acceptance of the stipulation in his favor. In refusing to direct a verdict for plaintiffs, the court explained, "I think this a question of credibility in this

---

**4.** See note 3, *supra*.

**5.** The district court ruled as a matter of law that plaintiffs could recover on indebtedness evidenced only by notes 3 and 4, because note 5 had not come due at the time of suit. The balance of the debt claimed by plaintiffs and subject to suit was therefore reduced to $357,-500, from $535,500.

**6.** The court ruled that "the . . . terms of the deed of purchase executed by Defendant and Levitt-Bayamon are devoid of any *indicium* that could shed light on the existence of a stipulation augmenting plaintiffs' original rights. Hence, the parties essentially rely on the intention of Defendant in entering into the contract [to support their theory of recovery]," *citing Merle v. West Bend Co.*, 97 P.R.R. 392 (1969).

**7.** Section 3471 provides:
"If the terms of a contract are clear and leave no doubt as to the intentions of the

contracting parties, the literal sense of its stipulations shall be observed.
"If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail."

** Appellant has different counsel on the appeal than he did below.

**8.** Rule 50(b) provides:
"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . . [A] party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered *in accordance with his motion for a directed verdict* . . . ." [Emphasis supplied.]

case and based purely on the question of intention. . . ." Because the court's ruling on plaintiffs' motion purportedly indicated the court's intention to let the case go to the jury, appellant argues that it was unnecessary for it to make a motion for a directed verdict on the converse ground of insufficiency in order to preserve the issue for appeal. As further proof of the district court's intention to send the case to the jury, appellant refers us to the court's statement in considering its later motion for j. n. o. v.: "[S]ince the very time when the motion for summary judgment was brought before me [the case] came down to credibility issues. . . . [T]hese are classical issues for a jury and there was evidence sufficient on the record for the jury to . . . conclude . . . that there was an assumption of all the obligations [under the notes]."

However, plaintiffs' motion for directed verdict and the court's statements did not relieve appellant of the duty to file a separate motion of its own. The purpose of the Rule 50(b) requirement is to alert the opposing party to the movant's claim of insufficiency before the case goes to the jury, so that his opponent may possibly cure any deficiency in his case should the motion have merit, and also so that the judge may rule on the adequacy of the evidence without impinging on the jury's fact-finding province. *See Sullmeyer v. Coca Cola Co.,* *supra* at 846 n. 17; 5A Moore's Federal Practice ¶ 50.08 at 50–88 (1977). Defendant did nothing before verdict to alert either the plaintiffs or the court that it challenged the legal sufficiency of the evidence of intent. Plaintiffs' own motion for directed verdict did not serve this purpose, nor could the court's denial of plaintiffs' motion constitute a ruling on whether or not there was sufficient evidence to go to the jury. Whether to direct a verdict for a plaintiff is an altogether different question from whether a plaintiff's evidence is strong enough to survive a defense motion. A verdict seldom is directed for a plaintiff even on very strong evidence. The purposes of Rule 50(b) would be subverted were one party's motion for directed verdict

to serve as his opponent's release from the Rule's requirement.

It is true that the court's remarks both when ruling on plaintiffs' motion for directed verdict and, thereafter, when denying appellant's motion for judgment n. o. v., reflected an assumption that the evidence posed a jury issue. But compliance with Rule 50(b) is not excused by demonstrating, after the fact, that compliance would probably have been futile. The most that this and other courts have done by way of relaxing the Rule is to accept something less than full compliance where substantial compliance has been shown. In *Bayamon Thom McAn, Inc. v. Miranda,* 409 F.2d 968 (1st Cir. 1969), defendants moved for a directed verdict on grounds of insufficiency at the end of plaintiffs' case, but did not renew the motion at the close of all the evidence. The district court expressly reserved ruling on the motion, however, declaring a firm intention to let the case go to the jury before it would apply a legal standard to the evidence. After the defendants briefly presented their rebuttal, the district court did submit the case to the jury, saying, "In view of the evidence submitted by the party plaintiff I decided to submit the case on the plaintiff's evidence." Once the verdict was rendered, the court invited defendants to make their motion for j. n. o. v., and ruled on it on the merits. In those circumstances, where a proper, albeit premature, motion had been made, and where the court by reserving ruling and by other actions had demonstrated its disposition to let the case go to the jury, we found that the district court had led counsel reasonably to believe that all had been done that was necessary to preserve the issue for review. We further noted the brief and inconsequential nature of the evidence introduced following defendants' first motion for directed verdict. *Compare Gillentine v. McKeand, supra* at 722–23. We emphasized, however, that we were not signalling that the compliance with Rule 50(b) was unnecessary: "[P]rocedural wrangles would multiply if the requirement could be deemed nonessential upon a mere showing of a court's con-

tinuing disinclination to grant such a motion." *Bayamon Thom McAn, supra* at 971.

The present case is obviously distinguishable from *Bayamon Thom McAn.* First, Levitt never moved on insufficiency grounds, or raised the issue at all, until after the jury's verdict, when it was too late. There is thus no basis, as there was in *Bayamon Thom McAn,* for treating the present case as one where there was substantial compliance with the Rule. Second, the court did nothing that could reasonably have caused Levitt to believe that all had been done that was necessary to preserve the issue for review. Appellant offers no excuse for its failure to comply with the Rule other than the ad hoc supposition of futility—a reason which, as indicated in *Bayamon Thom McAn,* is by itself not enough. *See id.* at 971.

■ The Seventh Circuit's decision in *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572 (7th Cir. 1976), cited by appellant, is similarly distinguishable. The appellant's evidentiary argument had been presented to the court before the case was sent to the jury, and the court "had firmly taken the position . . . that the jury was going to have the first opportunity to decide the case." *Id.* at 577. It is true that in *Pittsburgh-Des Moines,* as here, the opposing party did not register any objection to the court's ruling on the merits of the j. n. o. v. motion, and the court disposed of that motion on the merits. Appellants would have us treat such factors as a waiver of the Rule 50(b) bar. But *Pittsburgh-Des Moines* does not create any such far-reaching waiver rule. The Seventh Circuit looked at appellant's failure to object and the district court's substantive ruling merely as further evidence of the participants' understanding that the motion had been properly made pre-verdict and the issue saved for review. *Id.* at 575–76. Here a parallel argument fails for lack of the appropriate pre-verdict predicate. Appellant cites no further support for the waiver argument, nor do we think a waiver rule would be tenable in these circumstances: were such a rule

adopted, the important purposes of Rule 50(b) could too easily be foiled by an opposing party's reluctance to object when it seemed probable that the court would rule in its favor without intervention, or by the district court's reluctance to deny the j. n. o. v. motion on procedural grounds when it seemed more satisfactory to refer to the merits.

■ Last, appellant submits that even without technical compliance with the Rule, this court should either reverse or remand for plain error if it finds no evidence to support the verdict. *See House of Koskot Development Corp. v. American Line Cosmetics, Inc.,* 468 F.2d 64, 67 (5th Cir. 1972); *Little v. Bankers Life & Casualty Co.,* 426 F.2d 509, 511 (5th Cir. 1970). This circuit has acknowledged that in an "exceptional" case it is empowered to correct "plain error" to avert a "clear miscarriage of justice" in a civil action, despite counsel's failure to preserve his client's rights. *Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir. 1976); *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir. 1966). We have yet to find plain error in a civil proceeding, however, and we are not persuaded that the present case presents the appropriate circumstances, although we acknowledge that appellant's insufficiency claim is not frivolous. This case posed no particular evidentiary or legal difficulty, nor did the district court's rulings mislead. *See Giacalone v. Raytheon Mfg. Co.,* 222 F.2d 249, 251–52 (1st Cir. 1955). The case is not so peculiar nor the injustice so clear, *see Nimrod v. Sylvester, supra,* that we are disposed to relieve appellant of its own error.

We accordingly decline to consider if there was sufficient evidence for the jury to find an intention by the two companies to benefit plaintiffs.

2. *The legal effect of the stipulation in Deed No. 6*

■ Related to the foregoing matter, but to some degree different, is appellant's contention that as a matter of Puerto Rican law, the language in Deed No. 6 did not allow plaintiffs to impose personal liability

on Levitt-Puerto Rico under third party beneficiary doctrine whatever the other evidence bearing on intent. Appellees repeat their protest that appellant is barred from raising this objection since it did not do so in the district court. In response, appellant points to its motion for summary judgment, and later, to its motion for j. n. o. v. But the j. n. o. v. motion is of no help, since the question had not been earlier raised in a motion for directed verdict as required by Rule 50(b). And our examination of appellant's motion for summary judgment and its "Opposition to plaintiffs' motion for summary judgment and in support of defendant's motion for summary judgment" does not reveal that this point was called to the court's attention there. Appellant rather urged, on the basis of its president's deposition as well as the deed, that it never demonstrated any intention to undertake personal liability, arguing that "the intention of the contracting parties [must] prevail even in the face of seemingly explicit language to the contrary." In ruling on plaintiffs' motion for summary judgment the district court indicated that it had a similar understanding of appellant's position:[9] "[T]he parties essentially rely on the intention of Defendant in entering into the contract." *See supra* note 6. At a later point, defendant-appellant proposed that the question whether there was a stipulation at all in the contract be submitted to the jury. Nowhere in its pretrial motions did appellant contend that as a matter of Puerto Rican law the assumption clause of Deed No. 6 ruled out any finding—whatever the other evidence—that plaintiffs were third party beneficiaries of a stipulation to pay the entire indebtedness. Because this is a question of Puerto Rican legal doctrine on which it would be especially important to have ruling by a local district judge, *see Berrios Rivera v. British Ropes, Ltd.*, 575 F.2d 966 (1st Cir. 1978), and because the local law question is not one whose resolution is obvious from the statute and cases cited to us, we adhere to our rule of not considering issues not first presented to the district court. *Dobb v. Baker*, 505 F.2d 1041, 1044 (1st Cir. 1974); *Bird v. United States*, 241 F.2d 516, 520–21 (1st Cir. 1957).

### 3. *Attorneys' fees*

■ Appellant maintains that the district court erred by permitting an award of attorneys' fees to be included in the judgment. The court awarded appellees attorneys' fees to be calculated in accordance with the terms of the promissory notes. The notes provided that 10 percent of the amount due would be recoverable as attorneys' fees in the event of default. Appellant argues that since appellees were not suing on the notes, but on the stipulation in Deed No. 6 (in order to avoid the non-recourse provisions of the notes), they were not entitled to enforce the terms of the notes.

The district court ruled that "there was sufficient evidence . . . to conclude . . . that there was an assumption of all the obligations thereunder [*i. e.*, under the notes] including the payment of interest and attorneys' fees as stated in the notes . . . ." We see no cause to disturb this ruling. The basic terms of the indebtedness were evidenced by the notes. Appellees maintained that Levitt-Puerto Rico modified the terms of this indebtedness by assuming personal liability and abrogating the non-recourse provisions of the notes. This modification need not have encompassed abrogation of all the terms of the notes, and the district court was not clearly erroneous in concluding that the attorneys' fees provision was part and parcel of appellant's assumption of indebtedness.

### 4. *Standing*

■ Last, Levitt-Puerto Rico submits that since at the time of suit appellees were no longer holders of the three outstanding notes but had pledged them as collateral to

---

**9.** The court denied plaintiffs' motion for summary judgment and never formally ruled on defendant-appellant's.

a bank,[10] appellees lacked standing to bring this suit. We think this claim has no merit. As the district court ruled, plaintiffs were still owners of the notes when they brought suit, P.R. Laws Ann. tit. 31, § 5027, and therefore retained sufficient interest in the indebtedness to bring this action.

Appellant now attempts to recast its standing argument, explaining that the essence of the contention was that the proceedings below were defective because the Bank—an allegedly indispensable party under Fed.R.Civ.P. 19—was not joined. This deficiency, Levitt-Puerto Rico maintains, has subjected it to the risk of double liability. Despite appellant's failure to raise this contention below, it is properly before us: joinder of a Rule 19 indispensable party may not be waived. Fed.R.Civ.P. 12(h)(2); see In re Las Colinas, Inc., 426 F.2d 1005, 1015 n. 19 (1st Cir. 1970).

We do not consider that the bank was an indispensable party insofar as the district court was called on to determine the issue of Levitt-Puerto Rico's personal liability to Martinez Moll. The Bank could add nothing to determination of the question of Levitt-Puerto Rico's intent in assuming the mortgage indebtedness of Levitt-Bayamon. Insofar as a judgment will be enforced against Levitt-Puerto Rico, the Bank's interest in the notes is more significant. But the extent of that interest has not been examined on the record since the question was not put to the district court. If appellees have been meeting the terms of the loan, the Bank's interest in the notes may yet be contingent, and the value of the collateral purely a matter for Martinez and the Bank to resolve. If, however, Martinez has defaulted on the loan, the Bank may attempt to collect from Levitt-Puerto Rico on the notes. The relative rights of the parties in such an event are determined by Puerto Rican law, but the Bank's status in this proceeding would still depend on the considerations outlined in Rule 19. If joinder is possible before the entry of final judgment, it may be advisable. In the alternative, payment of the judgment might be conditioned on plaintiffs' obtaining a release of collateral from the Bank, as appellant suggests. This is a question for the district court. We therefore remand the case for consideration of the limited question of the Bank's status under Rule 19 and direct that the district court modify its judgment in this regard as it deems appropriate after further fact-finding.

*Judgment affirmed subject to modification by the district court upon remand for the limited purpose set forth in this opinion.*

---

10. Plaintiffs pledged the remaining notes to the Exchange Bank of Temple Terrace, a Florida bank, for unrelated loans.