**Paula H. ROY, Plaintiff-Appellee,**

v.

**STAR CHOPPER COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant,**

v.

**Ashok HINGORANY and Advanced Materials Systems, Inc., Third-Party Defendants-Appellees.**

**No. 77–1567.**

United States Court of Appeals, First Circuit.

Argued June 7, 1978.

Decided Oct. 3, 1978.

---

Raymond A. LaFazia, Providence, R. I., with whom Gunning, LaFazia & Gnys, Inc., and George E. Healy, Jr., Providence, R. I., were on brief, for defendant and third party plaintiff-appellant, Star Chopper Co., Inc.

Harry W. Asquith, Providence, R. I., with whom Edward W. Moses, and Swan, Jenckes, Asquith & Davis, Providence, R. I., were on brief, for third party defendants-appellees.

Leonard Decof, Providence, R. I., with whom Martin W. Aisenberg and Elizabeth D. Rode, Providence, R. I., were on brief, for plaintiff, appellee, Paula H. Roy.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Paula H. Roy, plaintiff-appellee, then a seventeen year old girl, received severe injuries to her hand while inspecting electroplating finished work at Advanced Materials Systems, Inc. (AMS), third-party defendant. The machine which caused the injury, a take-up unit which had two motor-driven pinch rolls and a spool at the opposite end, was manufactured by defendant-appellant, Star Chopper Company, Inc., to specifications provided by AMS. The machine was designed to allow continuous electroplating, at a constant speed, of aluminum and other metal. AMS, through its then Vice President Hingorany, contacted one Michael Cabassa to design a machine capable of performing the desired functions. Cabassa did the engineering drawings for the job, which included pinch rollers, and recommended that Star Chopper manufacture the machine. A draftsman from Star Chopper prepared more detailed drawings. No safety guards were provided in the drawings nor discussed by anyone. There was no warning on the machine of the dangers presented by the pinch rollers.

Plaintiff's hand required eleven operations; extensive surgical repair was performed to attempt to reconstruct the hand. Even following surgery, her hand retains only 5% of its functioning ability and is severely deformed. Plaintiff received benefits under the Massachusetts Workmen's Compensation Act for her injury. She brought suit against defendant manufacturer, Star Chopper, originally on three counts: negligence, warranty, and strict liability. She dropped the negligence count prior to the charge to the jury and dropped the warranty count after the jury returned a verdict in her favor of $348,000 based on strict liability.

Defendant brought a third-party action against Advanced Materials Systems, Inc., and its president, Ashok Hingorany for contribution and indemnity. The court dismissed the count for contribution and non-contractural indemnity; the jury found against Star Chopper on the implied indemnity count. Star Chopper now brings this appeal, asserting sundry errors by the district court.

## CONFLICTS QUESTION

Star Chopper complains of the court's choice of law rulings, both in the case in chief and in the third-party complaint. Under the rule enunciated in *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court, sitting in diversity cases, must follow the conflict of laws rules of the state in which it sits. The Rhode Island Supreme Court articulated the conflicts rules which should apply to this case in *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917, *cert. dismissed*, 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968). That case suggested that Rhode Island's choice of law rules reflect the modern trend toward a textured, flexible approach; it set out five guidelines for helping to determine which state's law should apply. They are:

"(1) Predictability of results.
(2) Maintenance of interstate and international order.
(3) Simplification of the judicial task.
(4) Advancement of the forum's governmental interests.
(5) Application of the better rule of law."

*Id.* 243 A.2d at 923. Prior to applying these guidelines, the court must first determine (a) whether there are sufficient contacts with each of the states so as to make application of either state's law constitutionally permissible, and (b) what the nature of the conflict between the laws of those states is. *Id.* 243 A.2d at 921 & 923; *Tiernan v. Westext Transport, Inc.*, 295 F.Supp. 1256, 1263 (D.R.I.1969).

### Case In Chief

The district court concluded that, since Massachusetts was the site of the injury and the residence of the plaintiff and since Rhode Island was the state of incorporation of the defendant manufacturer, its place of

business and the locus of the alleged tortious conduct, sufficient minimum contacts existed for constitutional application of either state's law. The court then analyzed each state's laws relating to the principal action and found that a true conflict existed. Rhode Island applies strict liability, *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255, 261 (1971), whereas Massachusetts has not yet clearly adopted it. *Coyne v. John S. Tilley Co., Inc.*, 368 Mass. 230, 331 N.E.2d 541 (1975); *Tibbetts v. Ford Motor Co.*, Mass.App., 358 N.E.2d 460 (1976).[1]

The trial court then applied the *Woodward* criteria and selected Rhode Island law. We now review the in-depth analysis by the district court of the *Woodward* factors.

(1) It is reasonable to assume that the defendant manufacturer, a Rhode Island corporation, would have purchased insurance commensurate with its potential liability under the Rhode Island strict liability rule. It was foreseeable that the corporation would be placed at risk for its manufacture of products and, as a corporation doing business in Rhode Island, would reasonably guide its actions by the liability imposed under Rhode Island law. Thus, its expectations would not be unfairly overturned by application of the Rhode Island strict liability rule. It is highly unlikely that the defendant would manufacture one set of machinery designed for use in Rhode Island and those states subscribing to strict liability and another separate set destined for states such as Massachusetts where strict liability has not yet been adopted. Predictability of result suggests the appropriateness of applying the Rhode Island rule.

(2) Interstate order is served when application of one state's law offends no law or policy of the other state. *Turcotte v. Ford Motor Co.*, 494 F.2d 173, 178 (1st Cir. 1974).

Here, Rhode Island has an interest in promoting a high standard of care in the manufacture of goods by Rhode Island corporations. Massachusetts' interest lies. in protecting its corporations from excessive liability. Since defendant is not a Massachusetts corporation, it falls without the class the law was presumably designed to protect. *Id.* at 179. To the extent that Massachusetts has an interest in encouraging foreign corporations to do business within the Commonwealth, this interest is not incompatible with enforcing strict product liability since, as noted by plaintiff, defendant continues to do business in Rhode Island notwithstanding that state's adoption of strict liability.[2] Rhode Island's strong interest in holding its corporations to a high degree of responsibility is served by applying its rule to this case. Massachusetts has little interest in the regulation of conduct of a Rhode Island corporation, except to the extent that the conduct injures Massachusetts' citizens or property. This interest is served by adhering to the stricter standard of liability imposed by Rhode Island. Here, the state of manufacture is also the forum state, which has legitimate interests to be served, see discussion *infra*. This is not an instance where the sole point of contact is the place of manufacture. *Compare Turcotte v. Ford Motor Co., supra*, 494 F.2d at 180 n. 9. Rhode Island's choice of law rules lean toward an interest balancing process. The district court properly weighed place of manufacture as one factor in deciding to apply Rhode Island law.

(3) The court felt that the judicial task would be neither more nor less simplified by application of either state's rule. We cannot find error in this conclusion.

(4) Rhode Island, the forum state, has expressed interest in holding manufacturers of defective products to a standard of strict liability. *Ritter v. Narragansett Electric Co., supra*, 283 A.2d at 261–262. It chose

---

1. Defendant urges on appeal that the court erroneously selected Rhode Island's pure comparative negligence over the Massachusetts rule which excludes recovery where plaintiff's negligence exceeds that of defendant by even 1%. No charge was given by the court relative

to comparative negligence; the case went to the jury without a count based on negligence.

2. Defendant neither does business regularly in Massachusetts nor employs any people there.

this standard in part out of a desire to place upon the shoulders of the manufacturer the costs of injury from its products rather than upon the hapless plaintiff. *Id.* at 262. The manufacturer affirmatively chooses to place its product into commerce; Rhode Island has determined that by so doing it will be held to a high degree of responsibility should that product injure someone. This strong policy of the forum state would be thwarted by applying negligence rather than strict liability.

(5) Rhode Island has stated clearly that it adopted strict liability because it views that rule as the preferable standard to which manufacturers of defective products should be held. *Id.* at 261–263. *See also Turcotte, supra,* 494 F.2d at 180 n. 8. Rhode Island's strict liability rule is based on § 402A of the Restatement (Second) of Torts (1965), which explained the rationale behind the rule as follows:

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402A, Comment c. The district court properly determined that Rhode Island's strong public policy in favor of strict liability represented that state's view of strict liability as the better rule of law.

■ A balancing of the above factors permits the conclusion that a Rhode Island state court would have applied its own substantive law with respect to the case in chief on the question of strict liability. The district court sifted the various considerations and so concluded. We find no error.

*Third-Party Complaint*

Defendant claims that the trial court erred in applying Massachusetts law in the third-party complaint on the question of contribution from the president (Hingorany) of the third-party defendant corporation (AMS) and on the question of noncontractual indemnity [3] from both third-party defendants.

■ Under both Massachusetts and Rhode Island law, there can be no contribution from the employer, AMS, because of the immunity conferred by the workmen's compensation statutes. *Liberty Mutual Insurance Co. v. Westerlind,* Mass., 373 N.E.2d 957, 959 (1978); *Cacchillo v. H. Leach Machinery Co.,* 111 R.I. 593, 305 A.2d 541, 543 (1973). There is thus no conflict of laws with respect to this question.

■ In Rhode Island, an employee has no immunity from suit by a fellow employee for employment related injuries. *Colarusso v. Mills,* 99 R.I. 409, 208 A.2d 381, 386 (1965). Massachusetts does confer immunity. *Saharceski v. Marcure,* Mass., 366 N.E.2d 1245, 1246 (1977). The trial court, faced with this conflict, looked to Rhode Island's conflicts rules. *Klaxon, supra,* 313 U.S. at 496, 61 S.Ct. 1020. Applying the

---

**3.** Noncontractual indemnity, unlike contribution, permits one tortfeasor to recover the entire amount of any recovery from the co-tortfeasor. Indemnity can be provided to avoid an unjust result (*e. g.,* where an employer is vicariously liable for the wrongdoing of an employee); where one tortfeasor is primarily liable and the other one secondarily liable; where one party has been merely negligent and the other intentionally or recklessly wrongful; where one tortfeasor has been "passively" negligent and the other "actively" negligent. *See generally* W. Prosser, *Law of Torts* § 51 "Indemnity" at 310–313 (4th ed. 1971); Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U.Pa.L. Rev. 130 (1932).

most significant contacts test, the court held that Massachusetts law applied. The district court found support for its holding in *Busby v. Perini Corp.*, 110 R.I. 49, 290 A.2d 210 (1972). While we do not read *Busby* as directly on point as did the court below, we agree that a Rhode Island court would have enforced the immunity. In *Busby*, the Rhode Island Supreme Court applied Massachusetts employer-employee immunity in a case involving an accident in Rhode Island where all involved parties were Massachusetts citizens. The court relied heavily on the policy favoring enforcement of the exclusive remedy clause of a sister state where an employee has received compensation pursuant to that state's laws. *Id.* 290 A.2d at 212. The *Busby* court reasoned that the rationale behind many states' workmen's compensation programs was the provision of an exclusive remedy to an injured employee. *See, e. g., Wilson v. Faull*, 27 N.J. 105, 141 A.2d 768 (1958). The court summed up by noting that the sounder and better rule of law called for enforcement of a sister state's exclusive remedy provision. *Busby, supra*, 290 A.2d at 213. Although *Busby* entailed employer-employee immunity, we think the same reasoning obtains where fellow employee immunity bars the suit. Here, the employment contract between plaintiff and third-party defendant AMS was entered into and performed in Massachusetts; plaintiff is a Massachusetts resident; AMS, though incorporated in Rhode Island, has its principal and only place of business in Massachusetts; plaintiff received workmen's compensation benefits pursuant to the Massachusetts statute; Massachusetts' exclusive remedy provision forbids suits against fellow employees for employment related injuries. Because of the strong policy of giving effect to sister states' exclusive remedy schemes, enunciated by the Rhode Island Supreme Court in *Busby*, we think the district court properly applied Massachusetts immunity.

Star Chopper raises the peripheral question of whether Ashok Hingorany, a corporate officer, should be allowed to avail himself of fellow employee immunity. The trial court found no Massachusetts case dealing specifically with the question, but reasoned that, since even states which do not recognize fellow employee immunity do grant corporate officers acting within their official capacity immunity, it was proper to assume that Massachusetts, with its more liberal stance toward employment related immunities would similarly immunize third-party defendant Hingorany.[4] Hingorany submitted an affidavit to accompany his motion to dismiss the third-party complaint as to him in which he averred that he was an employee of AMS. This was not contested or contradicted in any pretrial material. The court could, thereupon, accept as uncontroverted Hingorany's statement that he was an employee of AMS and, therefore, entitled to fellow employee immunity.

█ Star Chopper sought indemnity, both contractual and noncontractual, from the third-party defendants. The district court applied Massachusetts law to the noncontractual indemnity question.[5] The court recognized the broad immunity conferred by the Massachusetts immunity law and concluded that it extended to claims based on noncontractual indemnity as well as con-

4. One commentator has said that, since corporate officers "are treated as co-employees in states that make co-employees liable, it is only logical that they should be treated as co-employees in states that make co-employees immune." 2A Larson's Workmen's Compensation Law § 72.20 at 14–44 (1976).

5. It is unclear whether a true conflict exists between Massachusetts and Rhode Island on this question. The Massachusetts rule is that no claim for noncontractual indemnity will lie in an action against an employer. The Rhode Island rule, though not as clearly enunciated,

appears to be the same. The Rhode Island Supreme Court has held that, by enacting the workmen's compensation act, the legislature intended to exclude any common law right of action an injured employee might otherwise have against the employer. *Cacchillo v. H. Leach Machinery Co., supra*, 305 A.2d at 543; *National India Rubber Co. v. Kilroe*, 54 R.I. 333, 173 A. 86, 87 (1934). This proscription would *extend as naturally to a claim based on contribution from a joint tortfeasor as to one based on noncontractual indemnity.*

tribution.[6] After the district court rendered its decision, the Massachusetts Supreme Judicial Court addressed this specific question and answered it as did the trial court here: any claim for indemnity must rest solely in contract, either implied or express. *Liberty Mut. Ins. Co. v. Westerlind,* Mass., 373 N.E.2d 957, 959 (1978).

■■■ The trial court correctly concluded that Massachusetts immunity would not bar the contractual indemnity claims, *see id.* at 959, and applied Rhode Island substantive law to the question of whether an implied contract to indemnity existed. Star Chopper misreads the district court's rulings when it complains that the court did not apply Rhode Island's liberal indemnity law on this question. The court reasoned that the policies underlying strict liability would be best served by retaining in full the liability of the manufacturer for its defective manufacture of a dangerous product, but then permitting it to seek indemnity from the purchaser for failure to add a safety device should the jury find that the purchaser impliedly contracted with the manufacturer to do so. Star Chopper did receive the benefit of Rhode Island's substantive indemnity law on the issue of implied contractual indemnity.

## JURY CHARGE

■■■ Defendant claims that the court erred in charging the jury on the applicable law. Initially, we acknowledge plaintiff's argument that defendant waived many of its objections by failing to comply with Rule 51 of the Federal Rules of Civil Procedure:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Compliance with this rule has been held to be important to the "orderly and just functioning of the judicial system[.]" *Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir. 1976) (citation omitted). *See also IBM v. Catamore Enterprises,* 548 F.2d 1065, 1072 n. 14 (1st Cir. 1976), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). Exceptions to the rule will be made for plain error, *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir. 1966), to prevent a clear miscarriage of justice. *Giacalone v. Raytheon Manufacturing Co.,* 222 F.2d 249, 252 (1st Cir. 1955). But we are exceedingly slow to find plain error in civil litigation. *See Martinez Moll v. Levitt & Sons,* 583 F.2d 565 at 570–571 (1st Cir. 1978). Defendant, on appeal, lodges several complaints relating to various aspects of the court's rulings on strict liability, including the question of whether it was feasible to place guards on the machine, whether Star Chopper was under a duty to issue adequate warnings regarding the machine's dangers, and whether the dangers posed by the machine were obvious. Pertinent sections of the judge's charge are excerpted in the margin below.[7]

---

6. "As in the case of contribution, [noncontractual] indemnity is not allowed against one who has a defense, such as . . . immunity, against the original plaintiff." W. Prosser, *Law of Torts* at 313 n. 12 (4th ed. 1971) (citation omitted). *See also Newport Air Park, Inc. v. United States,* 419 F.2d 342, 347 (1st Cir. 1969).

7. The court's charge included the following: [T]he law considers that a product is in a condition of defectiveness or contains a defect if, upon weighing the ease and feasibility of construction of a safety device against the magnitude of threatened harm in not constructing such a device, it is determined that the latter is of great magnitude and the former is relatively inconsequential.

A manufacturer must give adequate warning of the existing danger, and a product sold without such warning is defective, whenever the manufacturer has reason to anticipate that danger may result from a particular use. The warning must be given in a manner that gives reasonable assurance that the information will reach those whose safety depends upon their hearing it. But a seller is not required to warn where the danger or potentiality for danger is generally known or recognized.

In other words, if you decide that the danger or potentiality of danger is generally known or recognized by those who the defendant could reasonably anticipate would come into contact with the machine, no specific warning was required to be given by the defendant of the danger. But if you decide that the manufacturer defendant did have reason to anticipate the danger and that the

■ The objections defendant made following the trial judge's charge to the jury were covered under a blanket exception to the court's reliance on Rhode Island law (presumably the strict liability imposed by Rhode Island, although not even this point is clearly articulated) rather than Massachusetts law.[8] We dealt extensively with the choice of law question above. For our purposes here, we note that this generalized objection does not sufficiently raise on appeal the issues defendant herein attempts to present. *Morris v. Travisono, supra,* 528 F.2d at 859. Nor is this an instance where the clear error exception can be invoked. On the contrary, the court's charge appears to comport with the applicable law, making reliance on the exception inapt.

We now turn to those sections of the jury charge to which Star Chopper did make timely objections and which it alleges were erroneous.

■ Star Chopper claims that the court should have instructed the jury on comparative negligence, even though the action went to the jury without a negligence count. Comment n to section 402A of the Restatement (Second) of Torts addresses the issue of whether contributory negligence is a defense to a strict liability action and concludes that it is not. The Comment goes on to explain that the defense of assumption of the risk, however, is available. Star Chopper attempts to avail itself of this distinction, suggesting that Rhode Island's comparative negligence law overlaps somewhat with the defense of assumption of the risk. This argument is without merit. The Rhode Island Supreme Court specifically re-

---

danger was not so obvious as to eliminate the manufacturer's responsibility, the failure to give adequate warning may make the machine unreasonably dangerous.

Star Chopper raised certain affirmative defenses on which the court instructed the jury. The court's charge regarding the defense of assumption of the risk was:

[T]he defendant is saying a dangerous situation existed; that the dangerous situation was obvious or that the plaintiff knew of the dangerous situation; and that with this knowledge, she voluntarily exposed herself to the danger and was injured thereby. Now, ladies and gentlemen, if you find that the defendant has established these facts by a fair preponderance of the evidence, then your verdict must be for Star Chopper. I add this is what we term an affirmative defense and the burden is on the defendant to prove such allegation by the fair preponderance rule. However, in weighing this standard, I instruct you that, "The standard to be applied is a subjective one, of what the particular plaintiff—here we mean Paula Roy—in fact sees, knows, understands and appreciates." If by reason of age, or lack of information, experience, intelligence or judgment, Paula Roy did not understand the risk at the time of the accident, then she did not assume the risk and cannot be denied recovery on this ground.

The court's instruction on the affirmative defense of lack of feasibility stated:

Star Chopper has raised another defense that you must consider. If it was not feasible at the time of manufacture for Star Chopper to install reasonably effective safety devices, Star Chopper is not liable to Miss Roy. You must be convinced by a preponderance of the

evidence that Star Chopper did not know, and a manufacturer of similar machines with reasonable skill would not have known, enough about the functioning of the machine at Advanced Materials' plant to enable the installation of reasonably effective safety devices. . . . You must find that Star Chopper made all reasonable efforts in light of the dangers of the machine to acquire that information. You should also consider whether Star Chopper could have installed reasonably effective devices, not necessarily the most effective devices. To prove that it was not feasible, Star Chopper also must show that there was no all-purpose safety device available and that installation of any available device would make the machine unusable or unsafe for at least one of the purposes Advanced Materials was likely to pursue. . . . Even if Star Chopper had been told or expected that Advanced Materials, Miss Roy's employer, would install safety devices, Star Chopper is nonetheless liable if it could have placed safety devices on the machine. Furthermore, even if it was not feasible for Star Chopper to install safety devices, the machine is still in a defective condition if Star Chopper failed to issue adequate warnings and Star Chopper would still be liable.

8. Defendant's objection to this portion of the charge was as follows: "I will take exception to the choice of law which the Court selected insofar as Rhode Island and Massachusetts law is concerned . . . .." Defendant did not specify in what manner the court's rulings on strict liability were erroneous.

jected this position,[9] *Kennedy v. Providence Hockey Club, Inc.,* 376 A.2d 329, 332–333 (R.I.1977), adhering to the logical distinction between negligently encountering a risk and knowingly encountering a risk.[10] The district court correctly refused to charge the jury on comparative negligence in light of Rhode Island's law.[11]

Star Chopper objected to the district court's failure to instruct the jury that, as a manufacturer of a component part,[12] it could not be held liable. The law is clear that a manufacturer of a component part can be held liable under strict liability. "There is no dispute that the strict liability applies to the manufacturer of the product, including the maker of a component part. . . ." Prosser, *Law of Torts, supra,* at 664. *See also* 1 Frumer and Friedman, Products Liability § 9.01, at 188.1–189 (1978).

Following the jury charge, Star Chopper objected to the court's use of the phrase "convinced by a fair prepounderance [sic] of the evidence" rather than "persuaded" when · discussing the burden of proof Star Chopper carried on its affirmative defenses. · Before us, it attempts to question the propriety of placing upon Star Chopper the burden of proof at all on these issues. Since this was not objected to at the trial below, *see* discussion *supra,* it is not properly before us. Fed.R.Civ.P. 51. Restricting our review to the court's language, we find no error in the court's phraseology.

## OTHER ISSUES

We find neither abuse of discretion nor reversible error in the court's evidentiary rulings, cited by defendant for review by us. Briefly, we see no abuse of discretion in the following: admitting projections of plaintiff's loss of future earning power; refusing to admit evidence of post-accident repairs to the machine, Fed.R.Evid. 407; permitting extensive cross-examination of witness Cabassa concerning the whereabouts of long-absent blueprints, *Hobart v. O'Brien,* 243 F.2d 735, 743 (1st Cir.), *cert. denied,* 355 U.S. 830, 78 S.Ct. 42, 2 L.Ed.2d 42 (1957); *see also United States v. Hathaway,* 534 F.2d 386, 401 (1st Cir.), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); refusing to admit statement of a deceased witness where requisites of Rhode Island's Deadman's Statute were not met, G.L.R.I.1956 (1969 Reenactment) § 9–19–11.

We do not find persuasive defendant's allegation that the trial court should be reversed for refusing to join as an indispensable party the plaintiff's workmen's compensation insurance carrier as the real party in interest. *See* Fed.R.Civ.P. 17(a) and 19(a), (b). Plaintiff entered into an agreement with the insurance carrier to reimburse the carrier out of any possible recovery for amounts paid pursuant to the workmen's compensation program and the insurance carrier expressly waived its right

---

**9.** Star Chopper states in its brief that Rhode Island has defined contributory negligence as overlapping the defense of assumption of the risk, citing *Richard v. H. P. Hood & Sons, Inc.,* 104 R.I. 267, 243 A.2d 910, 913 (R.I.1968). That case, to the extent that it stands for the principle that contributory (or comparative) negligence and assumption of the risk are merged, was effectively overruled by *Kennedy v. Providence Hockey Club, Inc.,* 376 A.2d 329, 332–333 (R.I.1977). Since Star Chopper's counsel was counsel in the *Kennedy* case, we cannot understand, in the light of an attorney's duty to state the law correctly, his failure to cite *Kennedy* to us.

**10.** The court correctly ruled that the standard to be applied in adjudging the defense of assumption of the risk is a subjective one, *i. e.,* what this particular plaintiff saw, knew, understood, and appreciated. *Kennedy v. Providence Hockey Club, Inc.,* 376 A.2d 329, 332 (R.I.1977); *D'Andrea v. Sears, Roebuck & Co.,* 109 R.I. 479, 287 A.2d 629, 633 (1972).

**11.** For a discussion of the split in authority concerning the applicability of comparative negligence in strict liability cases *see* 2 Frumer and Friedman, Products Liability § 16A[5][g], at 3B–226—3B–230 (1978).

**12.** There is considerable uncertainty whether Star Chopper correctly characterizes the machine which injured plaintiff as a "component part." Trial testimony suggests that the take-up machine was a self-contained unit, not a component part. However, even under Star Chopper's view of the take-up machine as a component part, strict liability can attach.

to sue defendant. There is, therefore, no danger that defendant will be subjected to "double, multiple, or otherwise inconsistent obligations," Fed.R.Civ.P. 19(a), by failure to join the carrier as a party plaintiff. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

▮ Star Chopper argues that the court erred in failing to declare a mistrial or grant a motion for a new trial after plaintiff's attorney adverted to the fact that defendant carried insurance. The reference to insurance was made during an extensive colloquy concerning the existence of blueprints for the defective machine and was entered while counsel was reading from a pretrial interrogatory.

And question 67 was, "Does Star Chopper, its attorneys, its insurance carrier or anyone acting in its behalf have or know of any photographs, motion pictures, maps, drawings, diagrams, measurements, surveys or other descriptions concerning either the scene of the accident or the take-up unit as referred to in interrogatory numbered 3406 and if so state (a) its nature, (b) its subject matter, specific subject matter and (c) the date it was made or taken and (d) the name and address of the person making it or taking it and the name of such person's employer, (e) what such item purports to show, illustrate or represent, and (f) name and address of person having custody of such items," and did you not answer under oath "67. The defendant has various photographs which it will produce upon request," was that your answer, sir?

This one reference was adjudged inadvertent by the trial court and not prejudicial. We agree. Following the colloquy quoted above, counsel continued his intensive questioning of the witness as to the blueprints; counsel did not draw attention in any way to the existence of insurance. We do not view a single, unrepeated reference to defendant's insurance carrier, entered inadvertently, in a trial which lasted three weeks, so inherently prejudicial that failure to declare a mistrial constitutes error.

Compare Cochran v. Dube, 114 R.I. 149, 330 A.2d 76 (1975). Star Chopper made the tactical choice of deliberately foregoing a corrective instruction on the issue, though offered the opportunity on at least two occasions by the trial judge. Under these circumstances, we cannot say that defendant was denied a fair trial. See Romano v. Caldarone, 78 R.I. 107, 79 A.2d 763, 766 (1951).

▮ Defendant asks us to declare the Rhode Island statute, permitting accrual of interest from the date of the cause of action, to be unconstitutional. R.I.G.L.1956 (1959 Reenactment) § 9–21–10, as amended by P.L.1977, ch. 10. Star Chopper asserts that the mandatory language of the prejudgment interest statute, i. e., interest from the date of the cause of action "shall be included," deprives defendant of its property without due process and denies it equal protection of the laws. It argues that a defendant is prejudiced by the mandatory language in those instances where dilatory tactics of the plaintiff have caused delay in going to trial. A federal court should properly apply a forum state's pre-judgment interest statute when sitting in a diversity case. Massachusetts Benefit Association v. Miles, 137 U.S. 689, 691, 11 S.Ct. 234, 34 L.Ed. 834 (1891); Moore-McCormack Lines v. Amirault, 202 F.2d 893, 896 (1st Cir. 1953). See also Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1052 (1st Cir. 1973). The Rhode Island pre-judgment interest statute was enacted to promote the expeditious settlement of claims. Isserlis v. Director of Public Works, 111 R.I. 164, 300 A.2d 273, 274 (1973). Star Chopper complains that, since interest runs from the date of the cause of action rather than the date of filing, a defendant stands at the mercy of a plaintiff who may decide to delay filing a claim. This point has been raised and determined adversely to defendant. In Kastal v. Hickory House, Inc., 95 R.I. 366, 187 A.2d 262, 264–265 (1963), the Rhode Island Supreme Court construed mandatory language in the pre-judgment interest statute as evincing a legislative purpose to spur defendant to settlement. The court stated that possible prejudice re-

sulting from a dilatory plaintiff was not a reason to render the statute open to alternate construction. "The legislative fiat is explicit and admits of no conditions or reservations. The claim for damages having been duly reduced to judgment the addition of interest is preemptory." *Id.* 187 A.2d at 264. The statute at issue in *Kastal* added interest from the date of filing the cause of action; the statute challenged here adds interest from the date of the injury. The same reasoning applies, however. Prejudgment interest statutes have a long history, dating at least from 1859 in this country, *see Massachusetts Benefit Association v. Miles, supra,* 137 U.S. at 691, 11 S.Ct. 234, and have been held to serve the legitimate purpose of making whole an injured party. *See, e. g., Louisville & Nashville R. R. Co. v. Sloss-Sheffield Co.,* 269 U.S. 217, 238–240, 46 S.Ct. 73, 70 L.Ed. 242 (1925); *Louisiana & Arkansas R. R. Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir. 1966). We find no constitutional infirmity in the statute. Interest statutes in Rhode Island apply to all verdicts rendered after their enactment. *Foster v. Quigley,* 94 R.I. 217, 179 A.2d 494, 495 (1962). The Rhode Island statute at issue here became effective March 21, 1977; the verdict was rendered on October 6, 1977. The district court correctly allowed interest to run from the date the cause of action accrued.

■ Star Chopper's allegations that the verdict was incomplete and that it was coerced do not withstand analysis. The jury returned a verdict in favor of the plaintiff on the issue of strict liability; it left unanswered the court's interrogatory on the warranty claim. This does not render the verdict incomplete since plaintiff thereupon withdrew the warranty count. The court had instructed the jury that plaintiff could recover on either strict liability count or the warranty count and the jury clearly found for her on the strict liability claim. There is no fatal inconsistency between permitting a recovery under strict liability and failing to render a verdict on the warranty count. *See Kissell v. Westinghouse Electric Corp., Elevator Div.,* 367 F.2d 375, 376 (1st Cir. 1966).

■ Star Chopper claims that the hesitation of juror Carnevale indicates that the verdict was coerced. The court polled the jury with respect to the third-party claim. When juror Carnevale was asked whether it was her verdict that judgment should be for third-party defendant AMS, the following colloquy took place:

The Clerk: Mrs. Carnevale—

Juror Carnevale: Could I ask, I need help. I think. I'd like to ask someone a question, I don't know who to ask.

The Court: That's not the point, Madam; the point is this is your verdict sheet. The question is when you voted, "Do you find for Star Chopper Company, Inc. or Advanced Materials System, Inc.?" all right—

Juror Carnevale: Advanced Materials Systems.

The Court: Is that clear enough to you?

Juror Carnevale: Yes, your Honor.

The Court: All right.

The Clerk: Do you find for Star Chopper Company, Inc. or Advanced Materials Systems, Inc.?

Juror Carnevale: Advanced Materials Systems.

The trial judge handled the matter properly. It is the court's function to determine solely whether the verdict represents the juror's position; the court should not inquire into the reasoning process or motivation behind the verdict. *See Grace Lines, Inc. v. Motley,* 439 F.2d 1028, 1031–1033 (2d Cir. 1971); *United States v. Grieco,* 261 F.2d 414, 415–416 (2d Cir. 1958), *cert. denied,* 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959). The day following the return of the verdict, a conference was held among Juror Carnevale, counsel, and the district judge. Juror Carnevale then explained that she had not wanted to grant a verdict in favor of AMS, but that the other jurors had convinced her that the law favored a verdict for AMS. She, therefore, returned a verdict for AMS because the jurors had convinced her that "you have to go by the law, not what you feel." This falls far

short of a showing of force or coercion by other members of the jury. The rule that a juror will not be heard to impeach his own verdict was aptly applied by the district court here. *McDonald v. Pless,* 238 U.S. 264, 269, 35 S.Ct. 783, 59 L.Ed. 1300 (1914). No impropriety has been alleged such as to warrant the setting aside of the verdict. "The verdict can stand if all of the jurors concur in it even though one or more may have done so reluctantly only out of deference to the views of the others and to avoid a hung jury." 9 Wright and Miller, Federal Practice and Procedure § 2504 at 491 (1971).

Proceeding to another of defendant's claims, we hold that the court properly granted in part third-party defendants' motion for summary judgment. As discussed *supra* in the section of this opinion dealing with choice of law, the court correctly ruled that, under Massachusetts law, neither third-party defendant could be held liable for contribution or noncontractual indemnity to Star Chopper. The court, having concluded this, properly granted summary judgment on those issues in favor of third-party defendants.

Defendant has not met the burden for a showing that the court abused its discretion in failing to grant a new trial. Defendant's arguments incorrectly perceive the law of strict liability and otherwise fail to show any trial error sufficient to require us to override the district court's refusal to grant a new trial. We have considered all other points raised before us by Star Chopper and find no merit in any of them.

*Judgment affirmed.*