STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-15-246

APPLETREE COTTAGE LLC,

Plaintiff,

v.

CHRISTOPHER BOND

Defendant.

ORDER

STATE OF MAINE
Cumberland ss Clerk's Office

OCT 06 2017  3:38PM

RECEIVED

At the conclusion of the non-jury trial in this case, the court was prepared to award nominal damages to counterclaim-plaintiff Christopher Bond on his claim of common law trespass. Counterclaim-defendant Thomas Egan never disputed that he had entered Bond's property on three occasions to investigate whether Bond was violating or preparing to violate a restrictive covenant. Egan did not damage or disturb Bond's property or enter any structures, but he took photographs on two of the occasions. On the first of those occasions Egan entered without authorization or consent from Bond.

The reason why the court reserved decision on the common law trespass claim was that Bond argued that his own subsequent unauthorized entry on Egan's land – although not the subject of any claim in this action – had been privileged. If Bond's entry had been privileged, there was at least a question whether Egan's entry was similarly privileged.

A person who intentionally enters land in possession of another without authorization commits a trespass regardless of whether he causes any damage. Restatement (Second) Torts § 163; *Medeika v. Watts,* 2008 ME 163 ¶ 5, 957 A.2d 980. Bond had not posted any no trespassing

sign, and he had never informed Egan that he could not enter. However, the court can find no authority for the proposition that authorization to enter a neighbor's property may be presumed.[1]

There was testimony at trial that on September 3, 2015, after Egan's first entry, Bond sent one or more emails authorizing Egan to go to his property (the actual exchange of emails was not offered or admitted into evidence). Although the court has found that it is more likely than not that Egan did not enter Bond's land on September 3 itself, the court concludes that Bond's emailed permission constituted consent (never revoked) for Egan's subsequent two entries.

Nevertheless, Egan's first entry was unauthorized. The existence of the restrictive covenant did not provide Egan with a privilege to enter Bond's land to investigate a potential violation of the covenant. In contrast with *Willow Lake Residential Association v, Juliano,* 80 So.2d 226, 248-49 (Ala. App. 2010), the restrictive covenant in this case did not expressly allow entry in order to determine compliance with the covenant.

Accordingly, Bond is entitled to judgment against Egan for $1.00 in nominal damages on the counterclaim for common law trespass.[2]

Finally, since Bond prevailed on Appletree's original restrictive covenant claim but Appletree, Captain Elliott LLC, and Egan prevailed on the vast majority of Bond's

---

[1]     This necessarily means that if Egan had brought a common law trespass claim against Bond, Egan would likely have recovered nominal damages against Bond for Bond's unauthorized entry on Egan's land. Bond no longer appears to be contesting that issue. In his post-trial brief Bond refers in passing to a privilege for the purpose of serving civil process, but Bond was not authorized to serve civil process, *see* M.R.Civ.P. 4(c)(2), so he would not have been entitled to claim such a privilege.

This also means that it is likely any unauthorized entry onto a neighbor's land (even though never expressly forbidden by the neighbor) and any unauthorized entry by door-to-door campaigners or Jehovah's Witnesses would constitute common law trespass. Since only nominal damages would be available in such circumstances, this has not opened the floodgates of litigation.

[2]     The court does not understand that Bond is seeking to hold Appletree Cottage LLC jointly and severally liable on the theory that Egan was acting as Appletree's agent. In any event, Bond could only collect $1.00 from either Egan or Appletree if Appletree were found jointly and severally liable, and there is no possibility here that Egan will not be able to pay the nominal damages.

2

counterclaims, including the nuisance claim that consumed the better part of two trial days, no costs shall be awarded.

The entry shall be:

1. On Christopher Bond's counterclaim for common law trespass against counterclaim defendant Thomas Egan, judgment is awarded in favor of Bond and against Egan for nominal damages of $1.00.

2. This constitutes final judgment on all pending claims.

3. No costs shall be awarded.

4. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: October ___6___, 2016

Thomas D. Warren
Justice, Superior Court

3

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-15-246

APPLETREE COTTAGE LLC,

Plaintiff,

v.

CHRISTOPHER BOND

Defendant.

STATE OF MAINE
Cumberland, ss, Clerk's Office

SEP 22 2017
10:15 AM
RECEIVED

ORDER

On September 20-21, 2017 a bench trial was held on defendant Christopher Bond's counterclaims for common law trespass and nuisance against Appletree Cottage LLC, Captain Elliot LLC, and Thomas Egan (collectively, the Appletree parties).

1. At the conclusion of the evidence and after closing argument, the court ruled from the bench for reasons stated on the record that the Appletree parties were entitled to judgment on Bond's counterclaim for nuisance. Bond has not proven the necessary elements of his nuisance claim by a preponderance of the evidence. *See Charlton v. Town of Oxford*, 2001 ME 104 ¶ 36, 774 A.2d 366. Specifically, Bond did not prove that the Appletree parties substantially interfered with the use or enjoyment of his land. Bond also did not prove by a preponderance of the evidence that the Appletree parties intended to interfere with the use or enjoyment of his land – except by seeking compliance with the restrictive covenant and by enforcing the Cape Elizabeth Zoning Ordinance. Bond does not have the right to use his land in violation of the restrictive covenant or the Zoning Ordinance, and the Appletree parties were entitled to contest that issue.[1]

---

[1] The court does not adopt the theory that any time an abutter seeks to enforce a restrictive covenant or files a zoning appeal, even if those efforts are ultimately unsuccessful, the abutter has necessarily engaged in nuisance by intending to interfere with use and enjoyment of land.

Finally, Bond did not prove by a preponderance of the evidence that the alleged interference reduced the value of his land. *Charlton*, 2001 ME 104 ¶ 38.

2. Embedded in Bond's claim for nuisance is a claim for wrongful use of civil proceedings, incorrectly referred to in his amended counterclaim as abuse of process. Under Maine law the tort of wrongful use of civil proceedings (the civil analog of malicious prosecution) requires proof that the defendant initiated or continued a lawsuit (1) without probable cause, (2) with a motive other than that of securing proper adjudication of the claim, and (3) the proceedings have terminated in favor of the plaintiff. *Pepperell Trust Co. v. Mountain Heir Financial Corp.*, 1998 ME 46 ¶ 17, 708 A.2d 651.

3. With respect to the Rule 80B proceeding brought by Appletree Cottage LLC, Bond did not prove by a preponderance of the evidence that the appeal was brought or continued without probable cause. The court finds that Appletree's motive was to secure a proper adjudication of its claim. In addition, the Rule 80B proceeding has not terminated in Bond's favor. *See Appletree Cottage LLC v. Town of Cape Elizabeth*, 2017 ME 177.

4. Appletree's declaratory judgment claim in the case at bar has terminated in Bond's favor, but Bond did not prove by a preponderance of the evidence that the claim was brought or continued without probable cause, and the court finds that Appletree's motive in bringing the declaratory judgment action was to secure a proper adjudication of its claim.

5. Under Maine law, abuse of process cannot be brought based on the filing of an action but instead covers the improper use of legal procedures (such as discovery or subpoenas) for an ulterior motive "after a suit has been filed." *Pepperell Trust*, 1998 ME 46 ¶ 16 n.8. *Accord, Potter Prescott Jamieson & Nelson P.A. v. Campbell*, 1998 ME 70 ¶ 7, 708 A.2d 283. In both the *Potter Prescott* and *Pepperell Trust* decisions the Law Court cited the First Circuit's decision in

*Simon v. Navon*, 71 F.3d 9 (1st Cir. 1995). However, to the extent that *Simon v. Navon* suggests that an abuse of process claim may be based on an express threat to file a baseless lawsuit solely for the purpose of compelling the threatened party to perform an unrelated action, the Law Court has not adopted that aspect of the decision. In any event, the court finds that Bond did not prove that the lawsuits filed by Appletree were baseless, that any express threat was made, that Appletree's lawsuits were in furtherance of any implied threat, or that the lawsuits were filed for any ulterior motive or purpose.[2]

6. The court reserves decision on the merits of Bond's trespass claim against the Appletree parties pending further briefing.[3] However, the court finds that the alleged trespass did not result in any harm or monetary damage and that Bond did not prove by clear and convincing evidence that the Appletree parties acted with malice or that their conduct was in any way so reprehensible that malice may be implied.

The entry shall be:

1. For the reasons stated on the record and in this order, judgment is entered for Appletree Cottage LLC, Captain Elliott LLC, and Thomas Egan and against Christopher Bond on Bond's counterclaim for nuisance. Bond's nuisance claim incorporates claims for wrongful use of civil proceedings and abuse of process, and judgment is also entered for Appletree LLC, Captain Elliott LLC, and Thomas Egan on those claims.

2. The court reserves decision on Bond's common law trespass claim against Appletree LLC, Captain Elliott LLC, and Thomas Egan pending post-trial briefing. For the reasons stated on the record and in this order, the court finds that the alleged trespass did not result in any harm or monetary damage and that Bond has not proven any entitlement to punitive damages.

---

[2] Bond separately argued that a subpoena to his contractor constituted an abuse of process. That subpoena was narrowed after a 26(g) conference, and Bond did not prove that the subpoena was issued for any ulterior motive or purpose.

[3] The only acts constituting alleged trespass were those of Thomas Egan, but it can be perhaps be argued that in performing those acts, Egan was acting as an agent for Appletree Cottage LLC and/or Captain Elliott LLC.

3. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: September 22, 2016

Thomas D. Warren
Justice, Superior Court

4

Pro se Def

**Christopher Bond**
**213 Ocean House Rd**
**Cape Elizabeth ME 04107**

PHf Appletree Cottage LLC
Sigmund Schutz Esq
Preti Flaherty Beliveau Pachios LLP
PO Box 9546
Portland ME 04112-9546

3rd Party Def Thomas Egan
J William Druary Esq
Marden Dubord Bernier & Stevens PA LLP
PO Box 708
Waterville ME 04901

3rd Party Def Thomas Egan
PHf Appletree Cottage LLC
3rd Party Def Captain Elliot LLC
Jonathan Brogan Esq
Norman Hanson & Detroy LLC
PO Box 4600
Portland ME 04112-4600

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-15-246

APPLETREE COTTAGE, LLC,

Plaintiff,

v.

CHRISTOPHER BOND

Defendant.

STATE OF MAINE
Cumberland, ss  Clerk's Office

MAR 2 2 2017

RECEIVED

ORDER

Before the court is defendant Christopher Bond's motion for partial summary judgment seeking dismissal of the claims for declaratory and injunctive relief asserted against him by plaintiff Appletree Cottage, LLC. The court has previously ruled on Appletree's motion to dismiss Bond's counterclaims in an order dated July 28, 2016. Regardless of the outcome of this motion, Bond's counterclaims for common law trespass and nuisance currently remain for trial.

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

This is the kind of case that gives summary judgment a bad name. Although the statements of material fact include an excess amount of quibbling over immaterial issues (particularly by, but not limited to, Bond in his 38-page Reply SMF), the court is able to discern whether there are disputed issues for trial.

Three issues are presented on Bond's motion for summary judgment. The first is whether there is a genuine dispute for trial as to whether Bond is making any use of the garage on his property that violates a restrictive covenant placed on the property by the former owner.

On that issue the court concludes that, under any interpretation of the restrictive covenant,[1] there is no evidence of any use by Bond that would violate the covenant's requirement that the garage (referred to as the "Outbuilding" in the covenant)

> shall not be used for any use other than as a residential garage, shall at no time be occupied as a dwelling or place of habitation of any kind and shall not be used for any commercial or industrial use whatsoever or any other use which is not permitted under the zoning ordinances of the Town of Cape Elizabeth.

This follows from the undisputed facts in Bond SMF ¶¶ 14-18, 20 (admitted). The storage of construction materials and tires in a garage (Bond SMF ¶ 20) does not constitute a non-garage use. Moreover, while Bond's insertion of a partition to create a space in the garage that is separate from the garage bay itself (Appletree Statement of Additional Material Facts ¶¶ 46-49) may theoretically provide Bond with the ability to use the garage in a manner that would violate the covenant, the insertion of a partition does not violate the covenant unless the partitioned space is in fact "used" in violation of the covenant.

The second issue is whether Bond's renovation of the garage by inserting a chimney for a wood stove constitutes a violation of the restrictive covenant that

---

[1] As discussed below, there is a dispute between the parties as to whether the covenant is ambiguous and whether, for purposes of this motion, Bond can concede that the covenant is unambiguous.

2

> no fixtures or appurtenances shall be attached to the Outbuilding
> which would extend beyond the existing height, width or length of
> the building.

On this issue there is a disputed issue of fact based on Egan's deposition testimony that he does not recall any chimney on the structure prior to the chimney installed by Bond. Egan Dep. 49, 79-80, cited in Appletree's response to Bond SMF ¶ 9. However indistinct Egan's recollection may be on that point and regardless of the strength of any opposing evidence, on a motion for summary judgment all inferences must be drawn in favor of the party opposing summary judgment.[2]

The remaining dispute between the parties is whether it is proper for Bond to argue that for purposes of his motion the court can assume that the restrictive covenant is unambiguous even though Bond has elsewhere argued the contrary.[3] Appletree contends that this is not appropriate. The court disagrees. As discussed above, without having to determine whether the restrictive covenant is vague or ambiguous as applied to other proposed uses, the court has found above that, on the existing summary judgment record, Bond's current use of the garage does not violate the covenant.

As far as the court can tell, Appletree's primary argument is that the court should resolve all disputes relating to the restrictive covenant because Appletree is seeking a declaratory judgment and because the court has construed count VI of Bond's counterclaim as possibly seeking a declaratory judgment. However, the court ultimately decided that count VI should be treated as a defense pursuant to M.R.Civ.P. 8(c). July 28, 2016 order at 6.

---

[2] Whether the prior owner had installed a chimney and if so, whether Bond's chimney exceeds the prior chimney in height are issues for trial.

[3] *E.g.,* Amended Counterclaim ¶ 51.

3

On the current record, with the exception of whether Bond's installation of a chimney violates the restrictive covenant, the court does not perceive that there is currently a justiciable controversy. As noted above, Bond's renovations of the garage may provide the possibility of uses that would require interpretation of the restrictive covenant and require the court to resolve whether in light of a specific use the restrictive covenant is too ambiguous to be enforced. On the current state of the record, however, all of the arguments (except those relating to the chimney) involve hypothetical future uses that are not susceptible to resolution through a declaratory judgment. *See Ten Voters of the City of Biddeford v. City of Biddeford,* 2003 ME 59 ¶ 7, 822 A.2d 1196. The decision to entertain a declaratory judgment action is discretionary, *Linnehan Leasing v. State Tax Assessor,* 2006 ME 33 ¶ 30, 898 A.2d 408, and the court would decline to entertain a declaratory judgment action with respect to hypothetical future uses that Bond might make of the garage.

Appletree's primary concern seems to be that Bond will attempt to use the garage to provide sleeping accommodations notwithstanding the restrictive covenant's limit on any use of the garage as "a dwelling or place of habitation." This stems from Bond's initial desire to put a bedroom in the garage. However, Bond has testified that once he learned of the restrictive covenant, he abandoned that idea and instead designed and built two accessory structures to accommodate extra living and bedroom space. Bond Dep. 69-71. Appletree has challenged those accessory structures in a separate lawsuit (AP-15-45) that is now on appeal to the Law Court.

At this time, as the court understands it, what remains for trial are Appletree's claim that the garage chimney violates the restrictive covenant, Bond's counterclaim for common law trespass, and Bond's counterclaim for nuisance. The court has previously expressed some doubt

4

as to whether Bond's nuisance claim is viable[4] and would expect some further briefing on that issue at the time of trial.

The entry shall be:

Defendant Christopher Bond's motion for summary judgment dismissing the claims of plaintiff Appletree Cottage, LLC is granted with respect to the issue of whether Bond's current use of his garage violates the restrictive covenant and is denied with respect to whether the chimney installed by Bond on the garage violates the restrictive covenant. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March ___ 21 ___, 2017

Thomas D. Warren
Justice, Superior Court

---

[4] July 28, 2016 order at 3-4.

5

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-15-246

APPLETREE COTTAGE LLC,

Plaintiff,

v.

CHRISTOPHER BOND

Defendant.

STATE OF MAINE
Cumberland ss Clerk's Office

JUL 28 2016

RECEIVED

ORDER

Before the court are the following motions:

(1) a motion by plaintiff Appletree Cottage LLC and third party defendants Thomas Egan and Captain Elliott LLC to dismiss counts II through VI of defendant Christopher Bond's amended counterclaim and his amended third party complaint;

(2) a Rule 56(f) motion by Appletree to stay any response to Bond's motion for summary judgment pending discovery.

1. Motion to Dismiss

For purposes of a motion to dismiss, the material allegations of the counterclaim must be taken as admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710. The counterclaim must be read in the light most favorable to Bond to determine if it sets forth elements of a cause of action or alleges facts that would entitle Bond to relief pursuant to some legal theory. *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 101. Dismissal is appropriate only when it appears beyond doubt that Bond would not be entitled to relief under any set of facts that he might prove in support of his claim. *Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶ 7, 843 A.2d 43. However, Bond may not proceed if the counterclaim fails to allege essential

elements of the cause of action. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell,* 1998 ME 703 ¶¶ 6-7, 708 A.2d 283.

The causes of action set forth in Bond's counterclaim and his third party complaint are essentially identical. Moreover, Bond's claims against Egan and Captain Elliott LLC are not proper third party claims. M.R.Civ.P. 14(a) allows a defendant to assert claims as a third party plaintiff against a person "who is or may be liable to such third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." In this case Bond is not contending that Egan and Captain Elliott LLC should be found liable to him if Bond is found liable to Appletree but is instead asserting independent claims against Egan and Captain Elliott LLC. Rather than third party defendants, Egan and Captain Elliott LLC are more properly considered to be additional parties on Bond's counterclaim pursuant to M.R.Civ.P. 13(h).

## 2. Count II – Statutory Trespass

In Count II of Bond's amended counterclaim and third party complaint, Bond asserts a statutory trespass claim under 14 M.R.S. § 7551-B. He has also brought a common law trespass claim in Count I of the amended counterclaim and third party complaint. On the instant motion Appletree and the third party defendants are not challenging the common law trespass claim but are seeking dismissal of the statutory trespass claim.

14 M.R.S. § 7551-B provides a statutory trespass cause of action for specifically enumerated damages.[1] While damage need not be proven to recover at least nominal damages for common law trespass, proof of damages is an essential element of a statutory trespass claim. *See*

---

[1] It applies if a person enters on the property of another without permission and "damages or throws down any fence, bar or gate; leaves a gate open; breaks glass; damages any road, drainage ditch, culvert, bridge, sign or paint marking, does other damage to any structure [on the property] or throws, drops, deposits, discards, dumps or otherwise disposes of litter" on the property. 14 M.R.S. § 7551-B(1).

2

*Medeika v. Watts,* 2008 ME 63 ¶ 6, 957 A.2d 980. Bond has not alleged any of the damages specifically enumerated in § 7551-B and count II of the amended counterclaim and third party complaint is therefore dismissed.

Count III – Nuisance

Bond alleges that Appletree has interfered with the use and enjoyment of Bond's property. A review of the allegations in his amended counterclaim and third party complaint demonstrates that the only factual allegations that could be encompassed within a claim for nuisance are assertions that Appletree has insisted that no contractor may work on an easement leading to Bond's property without Appletree's express permission. Amended Counterclaim ¶¶ 28-29; Amended Third Party Complaint ¶¶ 30-31.[2]

If Bond's easement rights are being wrongfully interfered with, he would have a claim for injunctive relief. Notably, however, Bond's claim for injunctive relief does not seek any relief for the alleged interference with his easement rights. *See* Amended Counterclaim ¶¶ 50-51; Amended Third Party Complaint ¶¶ 52-53.

It is less clear that his allegations are legally sufficient to state a claim for damages based on nuisance. Nuisance consists of "the use of one's own property" in a manner that causes injury to another's interest in the use and enjoyment of his property. *Johnson v. Maine Energy Recovery Co. LP,* 2010 ME 52 ¶ 15, 997 A.2d 741, *quoting Norcross v. Thoms*, 51 Me. 503, 504 (1863). In every case of which the court is aware, nuisance has involved the physical use of the tortfeasor's property in a manner that interferes with a neighbor's property rights. *See, e.g., Johnson v. Maine Energy Recovery Co. LP,* 2010 ME 52 ¶ 1 (emission of odors); *Rutland v.*

---

[2] This is also the basis for count IV of the amended counterclaim and third party complaint, discussed immediately below.

3

*Mullen,* 2002 ME 98 ¶¶ 3, 18, 798 A.2d 1104 (parking of cars on tortfeasor's property to block access to easement). The court is not aware that insistence on a purported legal right can constitute a nuisance but is also not aware of authority to the contrary.[3]

At this time, therefore, the court will deny the motion to dismiss as to Count III of the amended counterclaim and third party complaint to the extent that Bond is seeking damages for alleged interference with his easement rights.

Count IV – Tortious Interference with Easement Rights

Count IV of the amended counterclaim and third party complaint alleges a claim for "common law tortious interference" with easement rights. Bond has not cited any authority for the existence of a common law claim of tortious interference with easement rights, and the court is not aware of any. In any event, such a claim is subsumed by Bond's nuisance claim. Count IV is dismissed for failure to state a claim.

Count V – Tortious Interference with Contractual Relationships

In Maine a claim for tortious interference with a contractual or advantageous economic relationship requires proof of interference through the use of fraud or intimidation. *Rutland v. Mullen,* 2001 ME 98 ¶¶ 13-16. Bond alleges that Appletree, Egan, and Captain Elliott LLC used fraud and intimidation to have Bond's predecessor in title, Russell Wright, agree to a restrictive covenant which forms the basis for Appletree's claim against Bond in this action.

---

[3] The other elements of nuisance – (1) either intent to interfere with use and enjoyment of land or full knowledge that harm to another's use of land is substantially certain to follow, (2) interference substantial enough to reduce the value of the land, and (3) interference that was unreasonable in duration or extent, *see Johnson,* 2010 ME 52 ¶ 15 – have been adequately pleaded. Whether Bond will be able to prove those elements, particularly that the alleged interference was sufficiently substantial and unreasonable, is an issue for summary judgment or trial.

Specifically the fraud and intimidation claimed by Bond consists of allegations that Appletree, Egan, and Captain Elliott LLC coerced Wright to sign the restrictive covenant by threatening legal action to have an outbuilding that Wright was building torn down. The Law Court has held that a person who claims to have or threatens to protect a property right that the person believes to exist cannot be found to have engaged in fraud or intimidation even if the property right is later proved invalid. *Rutland v. Mullen,* 2002 ME 98 ¶ 16. In this case, however, Bond alleges that Appletree and the third party defendants knew that they did not have any legal power to force Wright to tear down the outbuilding. Amended Counterclaim ¶ 17; Amended Third Party Complaint ¶ 19.

Nevertheless, Bond does not have standing to seek damages on his own behalf based on allegations that his predecessor in title was the victim of fraud or intimidation. Count V therefore fails to state a claim on which relief can be granted to Bond.

## Count VI – Injunctive Relief

In Count VI of his amended counterclaim and third party complaint Bond seeks what he characterizes as injunctive relief although it appears that he is actually seeking declaratory relief. This involves two issues: (1) Bond's claim that the Restrictive Covenant held by Appletree was void ab initio because it was obtained from Russell Wright by fraud and/or intimidation and (2) his claim that aspects of the Restrictive Covenant are too vague and ambiguous to be enforced. Amended Counterclaim ¶¶ 50-51; Amended Third Party Complaint ¶¶ 52-53.

Initially, because the restrictive covenant is held by Appletree and not Egan or Captain Elliott LLC, Egan and Captain Elliott LLC are not proper parties on Count VI.

5

Secondly, the issue of whether the restrictive covenant is too vague and ambiguous to be enforced is more properly an affirmative defense to Appletree's complaint rather than a counterclaim. On the face of the pleadings, Bond is entitled to raise that defense.[4] *See* M.R.Civ.P. 8(c) (if a party has mistakenly designated a defense as a counterclaim, the court shall treat the pleading as if the defense had been properly designated). Appletree's motion to dismiss is denied as to that aspect of Count VI.

The remaining issue under Count VI involves Bond's claim that the restrictive covenant is unenforceable because it was obtained by fraud and/or intimidation against his predecessor in title. This is also properly considered as an affirmative defense rather than an independent claim. On the issue of whether a restrictive covenant can be invalidated due to alleged duress or intimidation, the Restatement of Contracts is clear that contract obtained by improper threats are not void but voidable and that they are voidable "by the victim" of the improper threat. Restatement (Second) Contracts § 175; *see id.* cmt d. Bond does not contend that he was the victim of the alleged duress.

Similarly on the issue of whether a restrictive covenant can be invalidated due to alleged fraud or misrepresentation, the Restatement is clear that contracts that are induced by fraud or misrepresentation are voidable "by the recipient" of the alleged misrepresentation. Restatement (Second) Contracts § 164. Bond does not contend that he was the recipient of the alleged misrepresentation.

Accordingly, Bond does not have standing to assert that the restrictive covenant is voidable due to duress, improper threats, fraud, or misrepresentation against his predecessor in

---

[4] The Restrictive Covenant is attached to the complaint and Appletree suggests that the court can read the covenant and conclude that it is sufficiently definite and clear to be enforceable. *See Moody v. State Liquor and Lottery Commission*, 2004 ME 20 ¶¶ 9-10, 843 A.2d 43. Without knowing exactly what is disputed between the parties, however, the court is hesitant to assess the restrictive covenant in the abstract.

title. This does not appear to be inequitable because a purchaser would have been aware of the restrictive covenant when the property was purchased and any limitations that the restrictive covenant placed on the property would have been priced in at the time of purchase.

### Appletree's Rule 56(f) Motion

Bond's summary judgment motion is based on his own affidavit, which asserts that he is not in violation of the restrictive covenant.[5] Appletree promptly filed a Rule 56(f) motion pointing out that it had served a number of discovery requests, that many were still outstanding, and that relevant evidence as to whether there has been any violation of the restrictive covenant was in the possession of Bond and a contractor performing renovation work for Bond. Appletree's Rule 56(f) motion complies with the rule as interpreted in *Bay View Bank N.A. v. Highland Golf Mortgagees Realty Trust*, 2002 ME 178 ¶ 22, 814 A.2d 449, and has convinced the court that Appletree needs the requested discovery in order to respond to Bond's motion for summary judgment.

Some time has now passed since the filing of Appletree's Rule 56(f) motion and the issuance of this order. The discovery requested by Appletree may have been provided during the interim. Accordingly, the clerk shall undertake to schedule a telephone or in person conference to determine the future scheduling of a response to the summary judgment motion.

The entry shall be:

1. The motion by plaintiff and the third party defendants to dismiss Counts II, IV, and V of the amended counterclaim and third party complaint is granted.

---

[5] In addition to filing a Rule 56(f) motion, Appletree originally opposed Bond's motion because there was no separate statement of material facts and because Bond's affidavit did not state that it was on personal knowledge. Bond thereafter filed a second affidavit and a separate Rule 56(h) statement to correct those deficiencies.

2. The motion to dismiss Count III of the amended counterclaim and third party complaint is denied.

3. The motion to dismiss Count VI of the amended third party complaint is granted as to third party defendants Egan and Captain Elliott LLC.

4. To the extent that defendant contends that the restrictive covenant is too vague and ambiguous to be enforced, plaintiff's motion to dismiss Count VI of the counterclaim is denied. That aspect of Count VI will be treated as an affirmative defense.

5. To the extent that defendant contends that the restrictive covenant cannot be enforced because it was obtained by fraud and/or intimidation against defendant's predecessor in title, Count VI of the counterclaim is dismissed.

6. Plaintiff Appletree Cottage LLC's Rule 56(f) motion to stay its obligation to respond to defendant Bond's pending motion for summary judgment is granted. Once plaintiff has had the opportunity to conduct discovery to obtain evidence that is within the possession, control, or knowledge of defendant Bond or third parties affiliated with Bond, the court will set a schedule for the filing of opposition papers to the pending motion for summary judgment.

7. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: July __28__, 2016

Thomas D. Warren
Justice, Superior Court